**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

**EUGENE F. KOREN, ROBERT E. MJOLSNESS, RICHARD G. OLSON, JOHN H. STINSON, and WILLIAM TROEHLER, for and on behalf of themselves and other persons similarly situated,**

Plaintiffs,

v.

**SUPERVALU, INC. and PREFERRED PRODUCTS, INC.,**

Defendants.

Civil No. 00-1479 (PAM/JGL)

**O R D E R**

---

APPEARANCES

William J. Wernz, Esq., for Leland Dake.

Michael Flom, Esq., for Plaintiffs.

---

JONATHAN LEBEDOFF, United States Magistrate Judge

The above-entitled matter came on for hearing before the undersigned Magistrate Judge of District Court on December 21, 2001 on non-party Leland Dake's Motion for a Protective Order. The case has been referred to the undersigned for resolution of pretrial matters pursuant to 28 U.S.C. § 636 and D. Minn. LR 72.1.

Leland Dake is a vice president of Defendant Supervalu, Inc. On April 11, 2001, the Plaintiffs in this action noticed Dake's deposition. At that

FILED 1-7-02
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD
DEPUTY CLERK

time, Plaintiffs' attorney, Stephen J. Snyder, was an attorney with Winthrop & Weinstine. Supervalu postponed the deposition, which was later rescheduled to October 29-30, 2001. In the meantime, on October 8, 2001, Snyder joined the law firm of Gray Plant Mooty Mooty & Bennett, P.A. ("Gray Plant").

Dake now moves for a protective order under Federal Rule of Civil Procedure 26(c) to prevent any Gray Plant attorney from either deposing him or assisting substitute counsel in deposing him. Dake contends that such a deposition is prohibited by Minnesota Rules of Professional Conduct 1.7(a) and 1.10 because he has an ongoing attorney-client relationship with Gray Plant. Dake retained Gray Plant in 1999 in an estate planning and employment capacity.

The Court must address three questions to resolve Dake's motion. First, the Court must determine whether an ongoing attorney-client relationship exists between Dake and Gray Plant. Second, the Court must consider whether Snyder's or another Gray Plant litigation attorney's deposition of Dake would be directly adverse to Dake's interests. Third, the Court must decide whether the circumstances rise to the level of good cause required to impose the protective order Dake seeks.

**<u>An Ongoing Attorney-Client Relationship Exists Between Dake and Gray Plant</u>**

The facts related to this question are not in dispute. In 1999, Dake and his wife commenced an attorney-client relationship with a Gray Plant estate planning attorney, Constance Paiement. Paiement gave the Dakes legal advice and drafted documents pertaining to wills, trusts, and other estate matters. After Paiement left Gray Plant in July 2000, Gray Plant attorney Julie Frommelt wrote the Dakes and told them she now had responsibility for their estate planning file. Both Paiement and Frommelt wrote the Dakes on several occasions between 1999 and the present. In May 1999, Dake also retained Gray Plant to advise him about an employment-related matter, which is unrelated to this case.

The communications from Gray Plant demonstrate that there is an ongoing attorney-client relationship between Dake and the firm in an estate planning capacity. A letter dated September 26, 2000 explicitly states that Frommelt will "have responsibility for your file on an on-going basis" and that "[w]e at Gray Plant look forward to continuing to provide you with excellent legal services whenever your needs arise." In November 2000, Frommelt sent three letters to the Dakes and also billed them for time spent reviewing their Crummey trust notices. In September 2001, the Dakes received a mailing from Gray Plant which stated, "If you would like us to review your estate plan, please contact your Gray Plant Mooty estate planning attorney." The Court

learned at the motion hearing that the Dakes had received additional letters on the day before the hearing regarding their estate plan. Gray Plant continues to maintain the Dakes' estate planning files. Furthermore, Dake considers his relationship with Gray Plant to be ongoing, and he wants to continue his attorney-client relationship with the firm.

An attorney-client relationship exists "when the parties enter an express or implied contract of representation or when an individual seeks and receives legal advice under circumstances which would lead a reasonable person to rely on the advice." Macawber Eng'g, Inc. v. Robson & Miller, 47 F.3d 253, 256 (8th Cir. 1995) (citing TJD Dissolution Corp. v. Savoie Supply Co., 460 N.W.2d 59, 62 (Minn. App. 1990)). The scope of the relationship is defined by the terms of the agreement and the nature of the legal advice. See id. In this case, the Court finds that Dake and Gray Plant have an ongoing attorney-client relationship with respect to Dake's estate plan. Gray Plant provided primarily estate planning services to Dake and contemplated providing such services on a continuing basis. The nature of estate planning is ongoing, as evidenced by Frommelt's review of the Crummey trusts and the mailings sent to the Dakes in September and December 2001. Moreover, Dake intends to continue using Gray Plant's estate planning services in the future.

The comment to Minnesota Rule of Professional Conduct 1.3 clarifies that doubt regarding whether an attorney-client relationship is ongoing

"should be clarified by the lawyer, preferably in writing." Minn. Rules of Prof'l Conduct R. 1.3 cmt. (1985). In this case, the writings from the Gray Plant attorneys to Dake indicated that the estate planning attorney-client relationship was ongoing. Gray Plant never told the Dakes that it considered them to be former clients or that it had closed their file.

**The Deposition of Dake by a Gray Plant Attorney Would Not Be Directly Adverse to Him as Contemplated by Minnesota Rule of Professional Conduct 1.7(a)**

Dake relies on Minnesota Rule of Professional Conduct 1.7(a) as grounds for his motion.[1] Rule 1.7(a) provides that "[a] lawyer shall not represent a client if the representation of that client will be directly adverse to another client" unless certain conditions are met including consent by both clients. Dake declined to consent to the purported dual representation, which he is entitled to do. Dake does not seek to disqualify Gray Plant from representing Plaintiffs in this litigation, only from deposing him.

The comments to the rule provide useful guidance to the Court. A lawyer cannot "act as advocate against a person the lawyer represents in some other matter, even if it is wholly unrelated." Minn. Rules of Prof'l Conduct R. 1.7 cmt. (1985). The Court interprets this statement as prohibiting a lawyer

---

[1] The District of Minnesota Local Rules specifically adopt the Minnesota Rules of Professional Conduct as the standard for professional conduct in federal court. See D. Minn. LR 83.6(d)(2).

from representing a party in a case where the opposing party is also the lawyer's client. The comment to the rule expresses the same interpretation: "Paragraph (a) prohibits representation of opposing parties in litigation." Id. (emphasis added). Such a scenario does not exist here. Dake is not a party in this litigation; he is merely a deponent.

Another comment is more germane to the question at hand. "[S]imultaneous representation in unrelated matters of clients whose interests are only generally adverse, such as competing economic enterprises, does not require consent of the respective clients." Id. In this case, Dake's relevant interest is his estate plan, which is in no way adverse to Plaintiffs' employment lawsuit against Supervalu. Dake argues that if Gray Plant attempts to impeach his credibility during the deposition, that would constitute direct adversity under the rule. The Court disagrees. While impugning a client's word may be directly adverse to that client in a general sense, Minnesota Rule of Professional Conduct 1.7(a) does not prohibit general conflicts. See id. Rather, the commentary to the rule instructs the lawyer to consider the specific interests affected. See id. Only when the specific interests at stake are identified can the directness of the adversity be ascertained. Dake has failed to persuade the Court that a challenge to Dake's credibility in the context of this employment litigation would adversely affect his estate plan, which is his legal interest represented by Gray Plant.

Much of Dake's authority can be distinguished on this significant point. In In Re Suard Barge Services, Inc., No. Civ. A. 96-3185, 1997 WL 703000 (E.D. La. Aug. 18, 1997), the clients' interests became directly adverse only when the lawyer moved for sanctions against one of his clients for failing to produce discovery to the other. See id. at *3. The court explicitly stated that a lawyer merely seeking potentially adverse discovery from his own client was not a violation of American Bar Association ("ABA") Model Rule of Professional Conduct Rule 1.7. See id. In Cendant Corporation Securities Litigation, 124 F. Supp. 2d 235 (D.N.J. 2000), a lawyer sought adverse testimony from his own client relating to matters on which he had advised and represented the client. See id. at 241, 243. In Committee on Legal Ethics v. Frame, 433 S.E.2d 579 (W.Va. 1993), a lawyer accepted a divorce case in which ownership of a corporation was a key dispute while his firm was suing that very corporation on behalf of another client. See id. at 580. Clearly, these situations entail direct adversity, but such circumstances are not present in the current case. Although this Court is not bound by ABA opinions, Dake cites Formal Opinion 92-367 as persuasive support. There, the ABA Committee found that a lawyer's examination of his own client as an adverse witness would ordinarily present a conflict of interest. See ABA Comm. on Ethics and Prof'l Responsibility, Formal Op. 92-367 (1992). However, the Committee emphasized that the degree of adversity is a consideration. See id. In the

scenario presented to the ABA, the client-deponent was a doctor who would be adversely examined as a medical expert witness. See id. In the present case, Plaintiffs do not seek to examine Dake about his estate plan, but rather, in his capacity as a manager for Supervalu. The degree of adverseness in this case, therefore, is much less than that in Formal Opinion 92-367. Accordingly, the Court finds that the three hazards of examining one's own client – conflicting duties of loyalty, breaches in confidentiality, and tension between the lawyer's pecuniary interests – do not create direct adversity here.

Returning to the discussion of Minnesota Rule of Professional Conduct 1.7, the commentary to the rule further indicates that "[t]he propriety of concurrent representation can depend on the nature of the litigation." Id. Dake has not addressed how the nature of this employment case relates to his estate plan, but the Court finds the nature of this litigation unrelated to the legal services provided by Gray Plant to Dake. Similarly, the nature of an attack on Dake's credibility in this employment case is distinct from the estate planning work done for Dake by the firm.

In situations where conflicts of interest are difficult to assess, the comment to Rule 1.7 most helpfully lists several factors for consideration: the duration and intimacy of the attorney-client relationship, the services provided by the lawyer, the likelihood of actual conflict, and the possible prejudice to the client if the conflict materializes. Id. In the present case, the attorney-client

relationship between Dake and Gray Plant has existed since May 1999, or approximately two and a half years, which is a relatively brief period of time. The intimacy of the relationship is quite insubstantial as evidenced by both the infrequency of contact and the limited nature of the legal services provided. As discussed above, the likelihood of actual conflict is slight given the respective natures of estate planning and employment litigation. The possibility of conflict was further minimized by Gray Plant creating an "ethical wall" to prevent communication of any of Dake's information or files to those lawyers or staff involved in this case. The possible prejudice to Dake in the event of a conflict is minimal.

The equities in this case also favor Plaintiffs' position. The deposition was originally noticed on April 11, 2001 when Plaintiffs' counsel was an attorney with Winthrop & Weinstine. It is uncontested that Supervalu postponed that deposition. Had the deposition taken place when originally noticed, the purported conflict would not have arisen. For all of the above reasons, thc Court finds that the deposition of Dake by a Gray Plant litigation attorney would not be directly adverse to Dake's interests.

**<u>The Circumstances Do Not Rise to the Level of Good Cause Required to Impose the Protective Order Dake Seeks</u>**

The Court must emphasize that its analysis of the purported conflict under Minnesota Rule of Professional Conduct 1.7(a) was undertaken

only for the purpose of searching for good cause for the requested protective order under Federal Rule of Civil Procedure 26(c), not for the purposes of discipline or disqualification. Although Dake has not convinced the Court that the precise protective order he seeks is warranted, the Court will order two safeguards. The ethical wall implemented by Gray Plant must remain in effect throughout this litigation. Also, the Gray Plant attorney who deposes Dake must not ask him any questions related to his estate plan or the employment advice he previously received from Gray Plant.

Based upon all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that Leland Dake's Motion for a Protective Order (Doc. No. 185) is **DENIED**.

Dated: January 7, 2002

JONATHAN LEBEDOFF
United States Magistrate Judge