**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

**EUGENE F. KOREN, ROBERT E. MJOLSNESS, RICHARD G. OLSON, JOHN H. STINSON, and WILLIAM R. TROEHLER, for and in behalf of themselves and other persons similarly situated,**

Plaintiffs,

**v.**

**SUPERVALU, INC., and PREFERRED PRODUCTS, INC.,**

Defendants.

---

Civil File No. 00-1479 (RHK/AJB)

**ORDER**

APPEARANCES

Stephen Snyder, Esq., and Craig Brandt, Esq., for Plaintiffs.

Barbara D'Aquila, Esq., and Shalanda Ballard, Esq., for Defendants.

---

JONATHAN LEBEDOFF, Chief United States Magistrate Judge

The above-entitled matter came on for hearing before the undersigned Chief Magistrate Judge of District Court on June 21, 2002 on Plaintiffs' Motion to Bar Defendants From Utilizing Statistical Data (Doc. No. 214), Plaintiffs' Motion to Compel Production of Documents (Doc. No. 215), Defendants' Motion for Protective Order (Doc. No. 216), and Defendants' Motion to Compel and for Protective Order (Doc. No. 227). The case has

JUN 28 2002
FILED
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD
DEPUTY CLERK

been referred to the undersigned for resolution of pretrial matters pursuant to 28 U.S.C. § 636 and D. Minn. LR 72.1.

## I. FACTS

This litigation arises out of an employment discrimination case brought under the Age Discrimination in Employment Act. The case has a long history which, having been recited in previous orders, will not be described in detail here. In the instant motions, the Parties seek the Court's assistance in resolving numerous discovery disputes.

## II. DISCUSSION

At the time of the hearing, the Court was aware of four properly filed motions. Thus, the Court was somewhat surprised during oral argument when Defense Counsel referred to the depositions of people not previously mentioned in any moving or opposition papers. However, since Plaintiffs' Counsel did not object to the discussion, the Court dismissed this occurrence as inconsequential.

Sometime after the conclusion of the motion hearing, the Court received Defendants' Motion for Protective Order, which addressed the previously unmentioned depositions. The motion had been filed June 20, 2002 for hearing on June 21, 2002. This is highly improper and out of compliance with our Local Rules, which require that moving papers be filed at least fourteen days prior to the hearing. See D. Minn. L.R. 7.1(a)(1).

Notwithstanding this irregularity, since Plaintiffs did not challenge discussion of this motion during oral argument, and had the opportunity to address the motion at that time, the Court will address the motion in this Order. Defense Counsel is cautioned, however, that the practice of "piling on" multiple motions without complying with the rules and without allowing Plaintiffs time to respond cannot be condoned by this Court. In the following discussion, the Court will address each of the Parties' motions separately.

### A. **Plaintiffs' Motion to Bar Defendants from Utilizing Statistical Data They Failed to Produce to Plaintiffs**

Plaintiffs seek an order disallowing Defendants' use of statistical data provided to Defendants' expert which was requested by Plaintiffs during discovery, but which Defendants never produced. Defendants respond to this request in two ways: (1) Defendants represent that they have provided Plaintiffs with all the statistical data relied upon by their expert, and (2) Defendants state that "statistical data" should be narrowly defined to mean only database information. Although Defendants were rather cryptic in their response, the Court concludes that Defendants do not want to be barred from using "other" (non-database) statistical data during cross examination, information which Defendants assert Plaintiffs could have discovered during depositions.

Plaintiffs' motion is denied as moot. Defendants assert that they have produced all information provided to their expert, and that they have provided Plaintiffs with all statistical evidence requested during discovery Since Plaintiffs stated at the motion hearing that this motion is confined to information it requested during discovery, it seems that Plaintiffs have all the information to which they are entitled. Plaintiffs' fear that Defendants' expert had the opportunity to utilize statistical data to which Plaintiffs were not privy is, therefore, unfounded.

If at trial it becomes obvious that this is not the case, Plaintiffs may again raise these concerns as a motion in limine or as an objection. However, at this point the Court is bound by Defendants' representations in court and in their signed opposition papers that they have produced all the information which they provided to their expert, and are therefore complying with their discovery obligations. See Onwuka v. Fed. Express Corp., 178 F.R.D. 508, 514 n.2 (D. Minn. 1997) (citations omitted).

**B. Plaintiffs' Motion to Compel Production of Documents Responsive to Plaintiffs' Most Significant Document Requests**

Plaintiffs seek an order striking Defendants' objections to twenty-five outstanding discovery requests. Plaintiffs assert that this is necessary because Plaintiffs are "very very concerned" that Defendants' objections are merely shams designed to coverup Defendants' withholding of

responsive documents. Plaintiffs cite Defendants' repeated failures to produce responsive documents until months after they were due. According to Plaintiffs, this dilatory conduct even applies to documents which Defendants have been ordered to produce by this Court. Defendants respond that they have been diligent in producing documents and that any late productions have occurred solely because Defendants found responsive documents after they were due.

The Court is sympathetic to Plaintiffs' concerns, and understands how multiple late disclosures erode Plaintiffs' confidence that they are receiving all responsive documents. However, Plaintiffs have not demonstrated that Defendants are purposely withholding information until the last possible moment or are failing to produce responsive documents at all. Since Plaintiffs failed to submit their motion in the format required by D. Minn. L.R. 37.2, the Court is not aware of any specific inadequacies in Defendants' discovery responses. Without evidence, the Court will not conclude that Defendants are failing to comply with Court Orders or that Defendants are purposely withholding relevant documents.

Plaintiffs' motion papers also undermine their claims. The Court can find only two instances where Plaintiffs assert that responsive documents are currently missing. (Pl. Mem. Supp. Mot. Compel at 8, 11.) In all other respects, Plaintiffs merely complain about late production of

documents. While the Court agrees that these late productions do little to boost Plaintiffs' faith in Defendants' sincerity, they also do not compel the Court to order further production, since it appears that responsive documents are now in the hands of Plaintiffs. The two instances in which Plaintiffs assert documents have not been received are Mr. Dake's "Orlando meeting notes" and documents relating to Mr. Payne.

Plaintiffs assert that Defendants have not produced Mr. Dake's "Orlando meeting notes" which Mr. Dake referred to in his deposition. Mr. Dake testified that he gave these notes to his superior, Mr. Chirtea. (Brandt Aff. Ex. 23 at 95-96.) Defendants did not specifically address these notes in their opposition papers or at the motion hearing. The Court finds these notes relevant, and orders Defendants to produce Mr. Dake's "Orlando meeting notes" within thirty days of this Order.

Plaintiffs also assert that "[s]ignificant documents relating to the forced retirement of Mr. Payne were missing from Defendants' pithy production." (Pl. Mem. Supp. Mot. Compel at 11.) However, Plaintiffs concede that Mr. Payne's personal file had previously been produced to them. (Norvold Aff. at ¶ 3.) Plaintiffs fail to state what, exactly, is missing from Defendants' production. Without a recitation of specific deficiencies in Defendants' production, the Court is unable to conclude that Defendants are

not complying with their discovery obligations. Therefore, Defendants need not supplement their production regarding Mr. Payne.

In conclusion, Plaintiffs's motion is granted as to production of Mr. Dake's "Orlando meeting notes," and denied in all other respects.

### C. Defendants' Motion to Compel and For Protective Order

Defendants seek more complete responses regarding four areas of discovery and an order disallowing the deposition of Paul Cimmerer. The Court will address each issue separately.

#### 1. Mr. Stinson's Probation Records

The Federal Rules of Civil Procedure provide for liberal discovery. See Fed. R. Civ. P. 26(b)(1); Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 351 (1978); Hickman v. Taylor, 329 U. S. 495, 501 (1947). "Parties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party . . . [and] reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1). Limited only by the broad scope of Rule 26(b), a party has the right to request any information within the "possession, custody, or control" of the party being served. Fed. R. Civ. P. 34(a).

Defendants seek an order requiring Hennepin County to release the probation records of Plaintiff Stinson. Defendants argue that such an order is necessary because the records "may" contain information "highly

relevant" to Mr. Stinson's claims of mental anguish and failure to seek other employment. (Def. Mem. Supp. Mot. Compel at 2.) Plaintiffs argue that Defendants have failed to prove the relevance of such records in light of the fact that Defendants already have Mr. Stinson's complete criminal record, divorce proceeding record, and alcohol treatment records. Moreover, Plaintiffs argue that Defendants deposed Mr. Stinson for two days on all subjects related to his short criminal history.

This part of Defendants' motion is denied. Defendants have provided no compelling reason for ordering production of these records. Mere speculation that these records may contain relevant information is not sufficient. Indeed, neither Party was able to articulate to the Court what information is even included in probation records. The Court will not infer relevance, especially in a case such as this where Defendants have a wealth of information related to Mr. Stinson's criminal history at their disposal.

### 2. <u>Communications Between Plaintiffs' Counsel and Mr. Weigand's Counsel</u>

Defendants seek all documents Plaintiffs received from, or sent to, the law firm of Mansfield and Tanick that relate to the instant lawsuit or informal claims made by Randy Wiegand. This request is based on Plaintiffs' Counsel's representation that he conferred with Mansfield and Tanick regarding this case before he represented Plaintiffs. Plaintiffs respond that

they have no documents responsive to this request. Plaintiffs contend that the only correspondence arguably within the scope of this request are two letters from Mansfield attorneys to Plaintiffs' Counsel. No Plaintiffs ever saw these letters. Plaintiffs have provided Defendants with synopses of these letters and have even offered to produce the letters themselves, provided Defendants produce "any similar documents they may have." (Pl. Mem. Opp. Def. Mot. Compel at 5.)

To the extent that Plaintiffs arguably assert a work-product objection, Plaintiffs' offer to produce the letters undermines such an objection. (Def. Mem. Supp. Mot. Compel at 5; Pl. Mem. Opp. Mot. Compel at 5.) In their opposition papers and at the motion hearing, Plaintiffs focused on their desire to produce this information only if Defendants are required to produce similar information. That argument is without merit. It is inappropriate to respond to a motion to compel by offering "deals." Plaintiffs' failure to address the motion directly, coupled with their offer to produce the information under certain circumstances, compel to the Court to grant this part of Defendants' motion. Plaintiffs must provide the letters at issue within thirty days of this Order.

### 3. Authorizations for Employment and Academic Information

Defendants seek an order compelling Plaintiffs to sign authorizations allowing release of academic and post-termination employment information. Defendants assert that such authorizations are "standardly" provided in employment discrimination cases and that the information is relevant to the issues of Plaintiffs' wage loss, mitigation, and job qualifications. Plaintiffs respond that Defendants' authorization forms are overbroad and intrusive. Plaintiffs also argue that Defendants' forms are duplicative insofar as Defendants have already deposed Plaintiffs on these topics. Plaintiffs take particular issue with Defendants' requests for personal information and birth dates.

Plaintiffs' Counsel has submitted authorization forms which Plaintiffs are willing to sign. These forms would be submitted to three types of institutions: the Minnesota Department of Economic Security, post-termination employers, and academic institutions. Plaintiffs' "Department of Economic Security forms" allow disclosure of information related to "unemployment records and benefits." (Norvold Aff. Ex.16.) Plaintiffs' "employer forms" allow disclosure of information regarding "job performance, job attendance, reason(s) for [Plaintiffs's] departure from employment, wage and/or salary information, and benefits information." (Id.) Plaintiffs'

"academic forms" allow disclosure of information regarding Plaintiffs' "academic record, attendance, and graduation information." (Id.)

The Court finds "Defendants' employer forms" overbroad and intrusive insofar as they seek "all information" regarding "personal residence . . . personal history . . . employment history . . . financial and credit information . . . benefits information . . . insurance information . . . and/or any other information whatsoever that is on file with [employer] and concerns [Plaintiff]." (Martin Aff. Ex. E.)

"Defendants' academic forms" are also overbroad and intrusive because they seek information related to Plaintiffs' "personal residence . . . personal history . . . extracurricular achievements . . . extracurricular deficiencies or failures . . . and/or any other information whatsoever that is on file with [the school] and concerns [Plaintiff]." (Id.) In the case of Plaintiff Dennis, Defendants also seek this information as it pertains to her high school career. (Id.) High school information is not relevant to this case.

Likewise, Defendants' "Department of Economic Security forms" are overbroad and intrusive because they allow release of a "[Plaintiff's] entire file including, but not limited to all unemployment records and benefits and/or any other information whatsoever that is on file with you." (Id.)

The Court finds that Plaintiffs' authorization forms will provide information relevant to Plaintiffs' wage loss, mitigation, and job qualifications without providing extraneous, personal information which Plaintiffs seek to protect. Defendants have not provided any compelling reasons for requesting the extraneous information. Therefore, this part of Defendants' motion is granted as to the release of information authorized by Plaintiffs' release forms, and denied as to the release of information authorized by Defendants' release forms.

**4. Tax Returns**

At the motion hearing, Defendants represented that they have not yet received Plaintiffs' complete tax returns. Plaintiffs did not rebut Defendants' representation that they have received only "pages" of some Plaintiffs' tax returns.

Tax returns are privileged documents, but they do not enjoy an absolute privilege from discovery. See St. Regis Paper Co. v. United States, 368 U.S. 208, 218-19 (1961). Where a party places its financial condition into dispute, tax returns may contain relevant information. See Farmers & Merch. Nat'l Bank v. San Clemente Fin. Group Sec., Inc., 174 F.R.D. 572, 585 (D.N.J. 1997); Eastern Auto Distrib., Inc. v. Peugeot Motors of Am., Inc., 96 F.R.D. 147, 149 (E.D. Va. 1982) (stating that income tax returns "may be the best source of complete and competent information as to [a] party's

income"). Courts in other jurisdictions have formulated a rule to determine whether tax returns should be disclosed in discovery. Under the test, a court must determine whether (1) the tax returns are relevant to the subject matter in dispute, and (2) a compelling need exists for the returns because the information sought is not obtainable from other sources. See Terwilliger v. York Int'l Corp., 176 F.R.D. 214, 216-17 (W.D. Va. 1997) (citations omitted); Fort Washington Resources, Inc. v. Tannen, 153 F.R.D. 78, 80 (E.D. Pa. 1994); Smith v. CSX Transp., Inc., No. 93-373-CIV-5-F, 1994 WL 762208, at *1 (E.D.N.C. May 18, 1994); United States v. Bonanno Organized Crime Family of La Cosa Nostra, 119 F.R.D. 625, 627 (E.D.N.Y. 1988). The party seeking discovery bears the burden of establishing relevance, and the objecting party must identify an alternative source for the information. See Terwilliger, 176 F.R.D. at 216-17 (citations omitted); Bonanno, 119 F.R.D. at 627. The Court finds the balancing test enunciated above appropriate to decide the discovery issue at hand.

In the instant case, the Court finds that tax returns are relevant to the subject matter in dispute and may contain information related to Plaintiffs' ability to mitigate the financial losses they suffered as a result of their terminations. The Court also finds that there is no other source from which Defendants can obtain this information. Accordingly, Plaintiffs must produce the requested tax returns within thirty days of this Order.

**5. Plaintiffs' Amended Requests for Admissions**

Defendants seek a protective order striking Plaintiffs' Amended Requests for Admissions and Second Requests for Admissions. Defendants base this request on their Motion for Protective Order regarding Plaintiffs' First Requests for Admissions. The Court will address all motions regarding requests for admissions below.

**6. Deposition of Paul Cimmerer**

Rule 26(c) governs protective orders and provides: "Upon motion by a party or by a person from whom discovery is sought, . . . for good cause shown, the court in which the action is pending . . . may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c). A protective order is appropriate to limit the scope of discovery or disclosures and may order that discovery not be had on certain issues. See Fed. R. Civ. P. 26(c)(4). A court has broad discretion in determining whether a protective order is warranted and the appropriate degree of protection. See May Coating Techs., Inc. v. Illinois Tool Works, 157.F.R.D. 55, 57 (D. Minn. 1994) (citations omitted).

The party seeking a protective order bears the burden of showing "good cause" for the order, in accordance with Rule 26(c) of the Federal Rules of Civil Procedure. See General Dynamics Corp. v. Selb Mfg.

Co., 481 F.2d 1204, 1212 (8th Cir. 1973)); Rolscreen v. Pella Prods. of St. Louis, Inc., 145 F.R.D. 92, 96 (S.D. Iowa 1992) (citing Iowa Beef Processors, Inc. v. Bagley, 601 F.2d 949, 954 n.5 (8th Cir. 1979)). Defendants must make a "specific demonstration of facts in support of the request as opposed to conclusory or speculative statements about the need for a protective order and the harm which will be suffered without one." Rolscreen, 145 F.R.D. at 96 (citations omitted). This requirement "furthers the goal that the Court only grant as narrow a protective order as is necessary under the facts." Id. (citation omitted). District courts may quash a deposition notice if it "subjects a person to undue burden." Miscellaneous Doc. Matter #1, Appellees v. Miscellaneous Doc. Matter #2, Appellants, 197 F.3d 922, 925 (1999) (8th Cir. 1999) (quoting Fed. R. Civ. P. 45(c)). "[E]ven if relevant," depositions are not permitted "where no need is shown." See id. (citation omitted).

In the instant case, Defendants seek a protective order barring Plaintiffs from taking the individual deposition of Paul Cimmerer, a vice president of Defendants' human resources department. Defendants object to this deposition because Mr. Cimmerer was previously deposed as a 30(b)(6) witness on one topic, stating that at that time Mr. Cimmerer testified extensively about succession planning. (Def. Mem. Supp. Mot. Prot. Order at 11.)

Federal Rule of Civil Procedure 30 addresses depositions. Rule 30(b)(6) allows the deposition of individuals who will testify on behalf of a corporation. Rule 30(b)(6) also states that a deposition conducted pursuant to its provisions "does not preclude taking a deposition by any other procedure authorized by the rules." Thus, the Court finds that the fact that Mr. Cimmerer served as a 30(b)(6) witness does not prevent him from being deposed in an individual capacity under Fed. R. Civ. P. 30(a)(1). In this respect, the instant case can be distinguished from the cases cited by Defendants wherein the depositions at issue were truly second depositions of individuals. However, the Court also declines to allow the deposition of Mr. Cimmerer to become "a second bite at the apple" regarding the 30(b)(6) topic about which Mr. Cimmerer has already testified. Therefore, Mr. Cimmerer may be deposed on topics other than "Topic 8" of the 30(b)(6) deposition notice. Accordingly, this part of the Defendants' motion is granted as to "Topic 8" subjects, and denied in all other respects.

In conclusion, Defendants' Motion to Compel and for Protective Order is granted in part and denied in part.

### D. Defendants' Motion for Protective Order Filed June 20, 2002

Defendants' motion addresses the scheduling of the depositions of Ms. Janis Tweedy and Mr. Richard Nawrot. At the motion hearing, the

Parties indicated that the scheduling difficulties have been resolved. Therefore, this motion is denied as moot.

### E. Defendants' Motion for Protective Order Regarding Requests for Admission and Plaintiffs' Interrogatory No. 26

In the instant motion Defendants seek an order limiting the scope of Plaintiffs' Interrogatory No. 26 and quashing Plaintiffs' requests for admissions.

#### 1. Plaintiffs' Interrogatory No. 26

Plaintiffs' Interrogatory No. 26 asks Defendants to:

> identify and set forth specifically and completely all facts or evidence that support in any way each of the affirmative defenses . . . asserted in Defendants' Joint Answer to Amended Complaint dated February 21, 2001; your answer to this interrogatory should include an answer specifically for each such affirmative defense and should specify the Plaintiff or Plaintiffs to whom the affirmative defense applies.

(Pl. Mem. Opp. Def. Mot. Prot. Order at 10.) Defendants argue that this interrogatory contains thirty discrete subparts, one for each asserted defense, which brings the total number of interrogatories in this case to well above the thirty allowed by the Pretrial Scheduling Order. Plaintiffs respond that this interrogatory does not contain thirty subparts since it does not ask about thirty discrete separate subjects.

Federal Rule of Civil Procedure 33 addresses interrogatories. The advisory comments to that rule state that Parties cannot evade limits on

the number of interrogatories by "joining as 'subparts' questions that seek information about discrete separate subjects." Fed. R. Civ. P. 33(a) (advisory committee's note) (1993 amendments). However, the notes go on to give the following example: "[A] question asking about communications of a particular type should be treated as a single interrogatory even though it requests that the time, place, persons present, and contents be stated separately for each communication." Id.

The Court finds that this interrogatory does not contain thirty discrete subparts pertaining to separate subjects. The Court agrees with Plaintiffs that this interrogatory is not only drafted in a very common format, seen by this Court on a weekly basis, but also is very similar to Defendants' Interrogatory No. 1 which seeks the identity of :

> each person known to . . . have any information relating to the factual allegations in this matter, including but not limited to factual allegations in your Complaint . . . and in the Joint Answer . . . . [S]ummarize the area and extent of each person's knowledge and information. . . . Your answer should include but not be limited to knowledge of factual allegations relating to all aspects of the lawsuit . . . [including] any defenses asserted . . . and/or any defenses that you assert to any affirmative matters that . . . Defendants have raised and/or do raise at any time.

(Pl. Mem. Opp. Mot. Prot. Order at 12.) Defendants' Interrogatory No. 1 seeks information related to all the claims in this case. If the Court were to employ Defendants' proffered interpretation of "subparts," this request, itself, would contain more than thirty interrogatories. The Court declines to

interpret this interrogatory or Plaintiffs' Interrogatory No. 26 in that way. Therefore, this part of Defendants' motion is denied, and Defendants must fully respond to Interrogatory No. 26 within thirty days of this Order.

### 2. Plaintiffs' First Requests for Admissions

On March 29, 2002, Plaintiffs served Defendants with their First Requests for Admissions. Defendants were granted four extensions to answer these requests for admissions, but failed to do so. Instead, Defendants filed the instant motion. Defendants contend that Plaintiffs have propounded in excess of 2287 requests for admissions, and that the requests are oppressive and unduly burdensome. Defendants further contend that Plaintiffs' requests for admissions are merely "disguised interrogatories," and that many of the requests do not make statements of fact, but rather ask Defendants to make statements of fact. (Def. Mem. Supp. Mot. Prot. Order at 2, 5.) Plaintiffs respond that they only propounded seventy-five original requests for admissions, that the requests are appropriately crafted in accordance with the Federal Rules, and that the requests serve the purpose of avoiding delay at trial by establishing the genuineness and foundation of exhibits which are undisputed.

Rule 26(a)(5) of the Federal Rules of Civil Procedure provides that parties may use requests for admission as a method to discover additional matter. The purpose of requests for admission is to expedite trial

by avoiding the need to prove undisputed or peripheral issues. See Lakehead Pipe Line Co., Inc. v. American Home Assurance Co., 177 F.R.D. 454, 458 (D. Minn. 1997). Requests for admission must "relate to statements or opinions of fact or of the application of law to fact, including the genuineness of any documents described in the request." Fed. R. Civ. P. 26(a). However, requests for admission are not discovery tools, and may not be used "as a means to establish facts which are obviously in dispute or to answer questions of law." Lakehead Pipe Line, 177 F.R.D. at 458. Rather, the purpose of requests for admission is to narrow issues and to put the other party on notice regarding facts and opinions that remain in dispute. See id. at 457.

The rules state that the party upon whom requests are served may be required to conduct a "reasonable inquiry and secure such knowledge and information as [is] readily obtainable." (Fed. R. Civ. P. 36(a) advisory committee's note (1970 amendment)). However, that party must not be required to examine an entire document to determine what facts it is being asked to admit. See Charles Alan Wright et. al., Federal Practice and Procedure ¶ 2258 (2d ed. 1994) (stating that a request for admission "should be phrased simply and directly so that it can be admitted or denied without explanation"); Havenfield Corp. v. H. & R. Block, Inc., 67 F.R.D. 93, 96 (W.D. Mo. 1973). Requests for admission must be direct, simple, and

limited to singular relevant facts. See Safeco of America v. Rawstron, 181 F.R.D. 441, 446 (C.D. Cal. 1998) (citing Securities & Exchange Comm'n v. Micro-Moisture Controls, Inc., 21 F.R.D. 164, 166 (S.D.N.Y. 1957)). Some Courts even hold that, absent unique circumstances, requests for admission must be crafted so as to require only a "Yes or No" answer. See Havenfield, 67 F.R.D. at 96. Any ambiguity in a request for admission should be construed against the drafter. See Hart v. Dow Chem. Corp., No. 95 C 1811, 1997 WL 627645, at *8 (N.D. Ill. Sept. 30, 1997); Ortho Diagnostic Sys., Inc. v. Miles, Inc., 865 F. Supp. 1073, 1079 (S.D.N.Y. 1994).

A party upon whom a request for admission has been served may move for a protective order under Fed. R. Civ. P. 26(c) on the basis that the request will cause oppression or undue burden. However, in a complex case a large number of requests for admissions may be justified. See Berry v. Federated Mut. Ins. Co., 110 F.R.D. 441, 443 (N.D. Ind. 1986) (admissions on 244 exhibits allowed); Wigler v. Electronic Data Sys. Corp., 108 F.R.D. 204, 206-07 (D. Md. 1985) (citing Al-Jundi v. Rockefeller, 91 F.R.D. 590, 592 (W.D.N.Y. 1981) (154 requests allowed in complex civil rights case) and Shawmut Inc. v. American Viscose Corp., 12 F.R.D. 488, 489 (D. Mass. 1952) (106 requests allowed in complex case)).

With the above standards in mind, the Court has conducted a thorough review of Plaintiffs' Requests for Admission. Although Defendants'

objections to Plaintiffs' requests are mostly of a general nature, in some instances Defendants have noted specific inadequacies in Plaintiffs' requests. The Court will address these specific arguments when appropriate. For brevity, the Court will not recite every request.

The Court does not find the number of Plaintiffs' requests for admission excessive. Defense Counsel stated at the motion hearing that this is a "huge case with multiple Plaintiffs" which involves "hundreds of thousands of documents." (Def. Counsel representation at June 21, 2002 motion hearing.) In such a case, it is both prudent and desirable to save valuable trial time by establishing the genuineness and foundation of undisputed exhibits prior to trial. See Lakehead Pipe Line, 177 F.R.D. at 458. Furthermore, Plaintiffs' Counsel represents that all but thirty-nine of the 523 documents addressed in the requests were produced by Defendants during discovery, and that all but forty-three documents have already been used as deposition exhibits in this case. (Snyder Aff. ¶ 3.) Therefore, Defendants are very familiar with these documents, and accessing them should not be an undue burden. Moreover, the Court disagrees with Defendants that Plaintiffs' requests number in the thousands. Plaintiffs' requests are properly numbered under the Rules. See Fed. R. Civ. P. app. forms 25.

**a. Plaintiffs' Requests for Admission Nos. 18, 23, 31, 56, and 61**

Defendants object to these requests because, inter alia, they are not confined to simple, direct, singular facts. The Court agrees. The requests seek admissions regarding the following: the type of document at issue, the time the document was created, the source of the information contained in the document, and that the document was made in the regular course of business. (Bremmer Aff. Ex. 1 at 5, 6, 7, 8, 12, 13.) Especially troublesome is the statement that the documents were created "by, or from information transmitted by, a person with knowledge." Plaintiffs argue that these documents were provided by Defendants during discovery and therefore Defendants should have the information readily available. The Court finds this argument unavailing. The requests leave too many issues open to interpretation. See Hart, 1997 WL 627645, at *8. They are not simple and direct. Therefore, this part of Defendants' motion is granted. Defendants need not answer Plaintiffs' Requests for Admission Nos. 18, 23, 31, 56, and 61.

**b. Plaintiffs' Requests for Admission Nos. 17, 22, 27, 30, 36, 40, 44, 46, 55, 60, 66, and 70**

Defendants object to these requests because they do not contain a statement of fact. Rather, according to Defendants, these requests ask Defendants to make statements of fact. The Court disagrees.

These requests seek information regarding the origin of several documents, specifically whether a document is Defendants' own statement, a statement by a person authorized by Defendants to make such a statement, or a statement made by Defendants' agent within the scope of the agency. That is all they request. This is appropriate foundation material. Contrary to Defendants' assertion, the requests do contain statements of fact: that "document X exists and that person Y is the source of the document." The requests then go on to ask Defendants to admit or deny that the source person falls into one of the three categories. Surely, Defendants have this information available to them. The majority of the documents were produced by Defendants and many were drafted by Defendants' Human Resources Department.

The Court has reviewed the exhibits containing the document lists. All documents are identified with Bates numbers or exhibit numbers, and the vast majority also state the source of the document. With that information, the Court finds that a "reasonable inquiry" should allow Defendants to identify the source person as a Defendant, an authorized person, or an agent. <u>See</u> Fed. R. Civ. P. 36(a) advisory committee's note (1970 amendment).

Furthermore, the Court finds Defendants' argument that in order to answer these requests it must "contact each of more than 150

sources to question them on every minute detail in the more than 523 documents" unavailing. (Def. Mem. Supp. Mot. Prot. Order at 10.) All Plaintiffs seek is an admission that the source of the document had some relationship to Defendants. There is no "minute detail" involved.

Accordingly, this part of Defendants' motion is denied. Defendants must answer Plaintiffs' Requests for Admission Nos. 17, 22, 27, 30, 36, 40, 44, 46, 55, 60, 66, and 70 within thirty days of this Order.

**c. Plaintiffs' Requests for Admission Nos. 14, 20, 33, 38, 52, 58, 63, and 68**

Defendants argue that these requests do not contain statements of fact, but rather ask Defendants to make statements of fact. The Court disagrees. These requests ask Defendants to admit that each document was prepared on or about the date shown on the document. As with the requests addressed immediately above, the Court finds that these requests do contain statements of fact: "that document X was prepared on or about the date shown on the face of the document." Furthermore, the Court finds Defendants' argument that in order to answer these requests it must "contact each of more than 150 sources to question them on every minute detail in the more than 523 documents" unavailing. (Def. Mem. Supp. Mot. Prot. Order at 10.) All these requests seek is admissions regarding the dates of the documents. Checking a date will not entail a search of "every minute

detail" of the document. This part of Defendants' motion is denied. Defendants must answer Plaintiffs' Requests for Admission Nos.14, 20, 33, 38, 52, 58, 63, and 68 within thirty days of this Order.

**d. Plaintiffs' Requests for Admission Nos. 16, 21, 26, 35, 39, 43, 54, 59, 65, and 69**

Defendants object to these requests by proffering the same "contacting 150 sources on every minute detail" argument asserted above. The Court also finds Defendants' argument unpersuasive with regard to these requests. These requests seek admissions that the documents were "received by the recipients, if any, shown on the document." (Bremmer Aff. Ex. 1.) This is a simple "yes/no" question. The Court cannot conceive of a scenario under which the details of the documents must be addressed in order to answer these requests. Accordingly, this part of Defendants' motion is denied. Defendants must answer Plaintiffs' Requests for Admission Nos. 16, 21, 26, 35, 39, 43, 54, 59, 65, and 69 within thirty days of this Order.

**e. Plaintiffs' Remaining Requests for Admission**

Defendants proffer no specific arguments regarding Plaintiffs' remaining requests for admission. Defendants' sole remaining argument is that the requests are burdensome and oppressive. However, as mentioned above, the Court does not find the number of requests improper.

The Court has reviewed the remaining requests and finds that they seek admissions regarding basic foundation information.[1] All requests are properly drafted to solicit a "yes/no" answer. Accordingly, this part of Defendants' motion is denied. Defendants must answer Plaintiffs' Request for Admission Nos. 1, 2, 13, 15, 19, 24, 25, 29, 32, 34, 37, 41, 42, 45, 47-51, 53, 57, 62, 64, 67, 71-75, and Amended Nos. 3-12 within thirty days of this Order.

### 3. **Plaintiffs' Second Requests for Admissions**

After Defendants filed their original motions, Plaintiffs served Defendants with Second Requests for Admissions. Defendants assert that these requests ask essentially the same things as the original requests and that they suffer from the same deficiencies Defendants identified in the first requests.

The Court has reviewed Plaintiffs' Second Requests for Admissions (Martin Aff. Ex. J), and finds that the requests do not seek duplicative information. Rather, the requests seek the same information

---

[1] The requests ask Defendant to admit that documents on Defendants' Source Log were provided to Plaintiffs during discovery in this case; to admit that documents are genuine copies of the originals; to admit that documents were prepared by, or at their direction of, the authors shown on the documents; to admit that documents were received by Defendants or their agents; and to admit that deposition transcripts set forth the testimony given on the date set forth in the document.

regarding different documents. The requests are exactly the same as Plaintiffs' first set of requests except that they refer to different documents.

Therefore, for the reasons stated above, Defendants' motion is granted in part and denied in part. For the reasons articulated in Part II.E.2.a. of this Order, Defendants' motion is granted as to Plaintiffs' Second Requests for Admission Nos. 7, 13, 17, and 40. Defendants need not answer these requests. For the reasons articulated in Parts II.E.2.b.-e. of this Order, Defendants' motion is denied in all other respects. Defendants must answer Plaintiffs' Second Requests for Admission Nos. 1-6, 8-12, 14-16, 18-39, and 41-47 within thirty days of this Order.

Based upon all the files, records, and proceedings herein, **IT IS HEREBY ORDERED:**

(1) Plaintiffs' Motion to Bar Defendants from Utilizing Statistical Data that They Failed to Produce to Plaintiffs (Doc. No. 214) is **DENIED AS MOOT**;

(2) Plaintiffs' Motion to Compel Production of Documents Responsive to Plaintiffs' Most Significant Document Requests (Doc. No. 215) is **GRANTED IN PART and DENIED IN PART** as set forth fully in the body of this Order;

(3) Defendants' Motion for Protective Order (Doc. No. 216) is **GRANTED IN PART and DENIED IN PART** as set forth fully in the body of this Order;

(4) Defendants' Motion to Compel and for Protective Order (Doc. No. 227) is **GRANTED IN PART and DENIED IN PART** as set forth fully in the body of this Order;

(5) Defendants' Motion for Protective Order (Doc. No. 246) is **DENIED AS MOOT**; and

(6) The Parties must fully comply with this Order and provide any outstanding discovery responses by July 29, 2002.

Dated: June 28, 2002

JONATHAN LEBEDOFF
Chief United States Magistrate Judge